## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 17-14-LPS |
| HO KA TERENCE YUNG, | : |
| Defendant. | : |

## THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S
## MOTION TO DISMISS THE INDICTMENT

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………………..1

ARGUMENT…………………………………………………………………………………..2

    A. Background……………………………………………………………………....2

        *1. The First Amendment Does Not Protect All Speech*………….………..2

        *2. The First Amendment Overbreadth Doctrine*………………….......….3

        *3. Strict Scrutiny Does Not Apply*………………………………………….6

    B. The Cyberstalking Statute Is Not Unconstitutionally Overbroad…..……..8

        *1. The Cyberstalking Statute Prohibits Serious Criminal Conduct*..……...9

        *2. The Cyberstalking Statute Does Not Chill Protected Speech*………..…12

    C. The Defendant's Argument to the Contrary Lacks Merit…….…………….14

CONCLUSION……………………………………………………………………………..16

Over the course of 18 months, the defendant repeatedly threatened, terrorized, and intimidated a family in Wilmington, Delaware.  In particular, the defendant published false, violent and sadistic statements about his victims on the Internet – including descriptions of rape, lynching, sexual molestation, and graphic violence.  Moreover, the defendant repeatedly posted personal ads on Craigslist and other websites with the intent that individuals interested in violent and sadistic sexual activity would go to the victims' residence in the middle of the night.   For this conduct, the defendant was indicted in the District of Delaware with cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B).

The defendant now moves to dismiss the Indictment on First Amendment grounds.   In so doing, he does not argue any of his own stalking conduct is entitled to constitutional protection.   (D.I. 38 at 1 n.1).   Instead, he claims that the cyberstalking statute is "overbroad in violation of the First Amendment," and thereby chills the free speech of others.   (D.I. 38 at 1, 4-10).   Accordingly, the defendant asks this Court to strike it down as a matter of law.

The overbreadth doctrine "prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002).  To prevail, the defendant must establish that a "substantial number" of the law's applications violate the First Amendment, "judged in relation to the statute's plainly legitimate sweep."   *United States v. Stevens*, 559 U.S. 460, 473 (2010) (citation omitted).  This he cannot do.

1

The defendant fails to mention that the argument he pursues now has been squarely rejected by every court to address it – including five Courts of Appeal, numerous district courts, and even the District of Delaware. The reasoning behind these decisions is plain: the cyberstalking statute is directed at <u>conduct</u>, not speech. To the extent the law extends to speech at all, that speech is not protected by the First Amendment. Thus, the statute poses no danger of chilling the constitutional rights of others. And even if the defendant is able to conjure up hypotheticals that may pose First Amendment concerns, they are insufficient to invalidate a statute that has numerous constitutional applications within its legitimate sweep.

## **ARGUMENT**

### A.  Background

The Supreme Court has repeatedly instructed that the overbreadth doctrine is to be employed "with hesitation" and "'only as a last resort.'" *New York v. Ferber*, 458 U.S. 747, 769-70 (1982) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). To understand the rationale behind this proscription, as well as the "limited" function of the overbreadth doctrine, some background is necessary. *Id.* at 770 (quoting *Broadrick*, 413 U.S. at 615).

   *1. The First Amendment Does Not Protect All Speech*

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. "The hallmark of the protection of free speech is to allow 'free trade in ideas' – even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 358

(2003) (quotation and citation omitted). Therefore, "as a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft,* 535 U.S. at 573 (internal quotation marks omitted).

The First Amendment, however, does not protect all speech. Some categories of expression have little to contribute to the marketplace of ideas, yet impose great harms on society. These include obscenity, defamation, fraud, incitement (fighting words), speech integral to criminal conduct, and threats of violence. *Stevens*, 559 U.S. at 468; *Black*, 538 U.S. at 358-359. The Supreme Court has long recognized that the government may restrict these types of speech since they have "such slight social value" that any benefit they afford is "clearly outweighed by the social interest in order and morality." *Black*, 538 U.S. 358-359 (quotation omitted); *Ferber*, 458 U.S. at 763-764 (". . . it is not rare that a content-based classification of speech has been accepted because it may be appropriately generalized that within the confines of the given classification, the evil to be restricted so overwhelmingly outweighs the expressive interests, if any, at stake . . .").

    2. *The First Amendment Overbreadth Doctrine*

The defendant challenges Section 2261A as being unconstitutionally overbroad in violation of the First Amendment. As set forth above, that requires him to prove that a "substantial number" of the law's applications violate the First Amendment, "judged in relation to the statute's plainly legitimate sweep." *Stevens*, 559 U.S. at

3

473.[1] At its core, the First Amendment overbreadth doctrine balances a law's potential to chill protected speech against the "obvious harmful effects" of "invalidating a law that in some of its applications is perfectly constitutional – particularly a law directed at conduct so antisocial that it has been made criminal." *United States v. Williams*, 553 U.S. 285, 292 (2008). Because of the "wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment," the overbreadth doctrine "must be carefully tied to the circumstances in which facial invalidation of a statute is truly warranted." *Ferber*, 458 U.S. at 769. This caution is necessary for several reasons.

First, facial challenges are "disfavored," since they often "rest on speculation" and call upon courts to formulate broad judicial rules without being moored to precise facts. *Washington State Grange v. Washington State Rep. Party*, 552 U.S. 442, 450-451 (2008). Second, a successful overbreadth challenge is particularly "strong

---

[1] Generally, if a person wishes to attack a criminal statute as unconstitutional, he may do so in one of two ways. A litigant may argue that the law cannot be constitutionally applied to him due to the particular facts or circumstances of his case. This is often referred to as an "as-applied" challenge. *Knick v. Township of Scott*, 862 F.3d 310, 320 (3d Cir. 2017). A party may also raise a "facial challenge" to a law, which asserts that the statutory text is "unconstitutional in every application, including their own." *Id.* A "successful as-applied challenge bars a law's enforcement against a particular plaintiff, whereas a successful facial challenge results in 'complete invalidation of a law.'" *Bruni v. City of Pittsburgh*, 824 F.3d 353, 362 (3d Cir. 2016) (citation omitted). In both of these circumstances, the litigant must allege that his own First Amendment rights have been aggrieved. *Knick*, 862 F.3d at 320. This corresponds to the "traditional rule" that "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others." *Ferber*, 458 U.S. at 767. The overbreadth doctrine, however, is a "second type of facial challenge in the First Amendment context" that is not subject to this restriction. *Stevens*, 559 U.S. at 473 (citation omitted).

medicine" for remedying a constitutional deficiency, because it invalidates the statute in all its applications – even if some of those applications are plainly constitutional. *Broadrick*, 413 U.S. at 613. Third, in many instances, an individual's First Amendment rights can be adequately protected through an as-applied challenge.[2] *Id.* at 613-614.

For these reasons, a defendant bears a "heavy burden" to establish that a statute is overbroad. *United States v. Matusiewicz*, 84 F. Supp. 3d 363, 368 (D. Del. 2015). The challenger must demonstrate "from the text" of the law "and from actual fact" that "substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (citation omitted). The "mere fact" that the defendant "can conceive of some impermissible applications of a statute" is not enough. *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). "[A] law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications." *Ferber,* 458 U.S. at 771; *see also Williams*, 553 U.S. at 292 (stating that the Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep") (emphasis in original).

---

[2] For example, in *Cantwell v. Connecticut*, 310 U.S. 296 (1940), a Jehovah's Witness was convicted of "breaching the peace" for playing a "phonograph record attacking the Catholic Church before two Catholic men" on the street. *Broadrick*, 413 U.S. at 613–14 (discussing *Cantwell*). The Supreme Court struck down Cantwell's conviction as a violation of his First Amendment rights. *Id.* The Court did not, however, "hold that the offense 'known as breach of the peace' must fall in toto because it was capable of some unconstitutional applications, and, in fact, the Court seemingly envisioned its continued use against 'a great variety of conduct destroying or menacing public order and tranquility.'" *Id.* (quoting *Cantwell*, 310 at 308).

5

### 3. *Strict Scrutiny Does Not Apply*

The defendant asserts that the cyberstalking statute is a "content-based" speech restriction – i.e., it "applies to particular speech because of the topic discussed or the idea or message expressed." (D.I. 38 at 2-4) (citing *Reed v. Town of Gilbert, Ariz.*, 135 S.Ct. 2218, 2226 (2015)). As a result, the defendant claims that the Court must use "strict scrutiny" in performing its overbreadth analysis here. (*Id.*). This argument fails for two reasons.

First, an argument that a statute is "overbroad" has its own legal framework, separate and apart from strict scrutiny. "Strict scrutiny" is one of several tiers of analysis that can apply in a "typical" facial challenge, which the defendant has not raised here.[3] (D.I. 38 at 4); *Stevens*, 559 U.S. at 467, 472-473 (distinguishing between a "typical" facial challenge where strict scrutiny review would apply and an overbreadth facial challenge); *Ashcroft* v. *American Civil Liberties Union*, 535 U.S. 564, 585 (2002) (distinguishing between "substantial overbreadth" and "strict scrutiny analysis). The rule places the burden on the government to establish that

---

[3] And if he did, he would plainly not succeed. When a law reaches speech or conduct that falls into one or more of the categories not protected by the First Amendment – e.g., threats, speech integral to criminal conduct, or defamation – a typical facial attack on the statute is impractical. This is so because, in order to meet the standard for such a challenge, a person must show that all of the statute's applications are unconstitutional. *Stevens*, 559 U.S. at 472-473 (standard for a "typical facial attack"); *see also* D.I. 38 at 4 (defendant's brief citing this standard). Thus, where a defendant argues that a statute restricts "both protected and unprotected speech in the same indivisible statutory text," the overbreadth doctrine is the only viable option. *See* Scott Keller & Misha Tseytlin, *Applying Constitutional Decision Rules Versus Invalidating Statutes in Toto*, 98 VA. L. REV. 301, 352-355 (2012) (discussing the interplay between the overbreadth doctrine and a typical facial challenge when multiple tiers of scrutiny could apply to a statute based on its text).

6

a statute "furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 S. Ct. at 2231. By contrast, the overbreadth doctrine places the burden <u>on the defendant</u> to demonstrate that a "substantial number" of the law's applications violate the First Amendment, "judged in relation to the statute's plainly legitimate sweep." *Stevens*, 559 U.S. at 473. Indeed, the fact that these are two different frameworks is plain from the defendant's own brief. Although he claims that strict scrutiny applies (D.I. 38 at 2-4), he fails to employ it in arguing that the cyberstalking statute is overbroad. (D.I. 38 at 4-10).

Second, even if the defendant raised a "typical" facial challenge here, strict scrutiny would not apply. The cyberstalking statute does not contain the type of "content-based" speech restriction that triggers this level of analysis. To the extent that the cyberstalking statute regulates speech at all, that speech is not protected by the First Amendment. *See Section B, infra.* When a law regulates "unprotected" speech in this way, it may discriminate on the basis of content – so long as the rationale behind it is moored to "the very reason the entire class of speech at issue is proscribable."[4] *Black*, 538 U.S. at 361-362 (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992)).

---

[4] For example, Congress may pass a statute that criminalizes threats directed against the President. *R.A.V.*, 505 U.S. at 388-389. Such a law is "content-based," since by its nature a threat sends a particular type of message. *Id.* Nonetheless, the statute does not require strict scrutiny so long as it does not prohibit specific ideas or viewpoints. *Id.* This is so because the rationale behind the statute is to protect someone from "the fear of violence" – the very reason "threats" lack constitutional protection in the first place. *Id.* (discussing how the government may criminalize threats against the President, but could not "criminalize only those threats against the President that mention his policy on aid to inner cities").

7

The same is true with the cyberstalking statute. At minimum, the law prohibits "conduct performed with serious criminal intent" that causes "substantial emotional distress" to a victim. *United States v. Sayer*, 748 F.3d 425, 435 (1st Cir. 2014). It does not discriminate on the basis of viewpoint or idea. *See Black*, 538 U.S. at 361-363 (concluding that a cross-burning statute was not subject to strict scrutiny because it "bans cross burning with intent to intimidate" and not on political beliefs). To the extent the law extends to speech at all, that speech fits into one or more of the aforementioned categories not protected by the First Amendment. *See Section B, infra.*

Accordingly, even if strict scrutiny were relevant to the overbreadth analysis, it would not apply in this case.

**B.    The Cyberstalking Statute Is Not Unconstitutionally Overbroad**

The defendant cannot meet his burden to establish that Section 2261A(2) is unconstitutionally overbroad. Every court to address this argument has rejected it – to include five Courts of Appeal and the District of Delaware. *Sayer*, 748 F.3d at 434-436 (First Circuit); *United States v. Osinger*, 753 F.3d 939, 943-945 (9th Cir. 2014); *United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012); *United States v. Bowker*, 372 F.3d 378-379 (6th Cir. 2004) *rev'd on other grounds by* 543 U.S. 1182 (2005); *United States v. Anderson*, 700 Fed. Appx. 190, 192-193 (4th Cir. June 27, 2017) (non-precedential); *United States v. Moreland*, 207 F. Supp. 3d 1222, 1226-1229 (N.D. Okla. 2016); *United States v. Matusiewicz*, 84 F. Supp. 3d 363, 367-368 (D. Del. 2015); United *States v. Ackell,* No. 15-CR-123-01-JL, 2016 WL 6407840, at *4-*6 (D.N.H.

Oct. 28, 2016); *United States v. Shrader*, No. 09-cr-00270, 2010 WL 2179570, at *3-*4 (S.D.W.V. May 26, 2010).

As explained below, two related points form the rationale of these decisions. First, the cyberstalking statute proscribes criminal conduct, not speech. In such circumstances, an overbreadth challenge succeeds "[r]arely, if ever." *Hicks*, 539 U.S. at 124. Second, to the extent that the statute extends to speech at all, that speech would fit into one of several categories of expression that the First Amendment does not protect. Thus, the speech-chilling concerns underlying the overbreadth doctrine are not present here.

### 1. The Cyberstalking Statute Prohibits Serious Criminal Conduct

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293 (2008). By its plain terms, the cyberstalking statute prohibits serious criminal conduct, not speech protected by the First Amendment.

Section 2261A was enacted as part of the "Violence Against Women Act," Pub. L. No. 104-201, 110 Stat. 2422, 2655 (1996) ("VAWA"). Since passage in its original form 20 years ago, VAWA has served as a federal response "to the 'escalating problem of violence against women,' [enacted] in recognition of the severe toll such crimes have on our society in terms of 'health care, criminal justice, and other social costs.'" *United States v. Page*, 167 F.3d 325, 326 (6th Cir. 1999) (Moore, J. concurring in en banc order) (quoting S. Rep. No. 103–138, at 37, 41 (1993); Pub. L. No. 103–322, 108 Stat.

9

1796, 1902–55 (1994) (original enactment of VAWA)). The "threat of violence, real or perceived, is almost always present" in stalking cases. *Staley v. Jones*, 239 F.3d 769, 786 (6th Cir. 2001) (quotation and citation omitted) (rejecting overbreadth challenge to state anti-stalking statute).

The cyberstalking statute is a means to address this problem. In pertinent part, Section 2261A(2) provides:

> Whoever . . . with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that—
>
> (A) places that person in reasonable fear of the death of, or serious bodily injury to –
>
>     i. that person;
>
>     ii. an immediate family member (as defined in section 115) of that person; or
>
>     iii. a spouse or intimate partner of that person; or
>
> (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A),
>
> shall be punished as provided in section 2261(b) of this title.

18 U.S.C. § 2261A(2). A "course of conduct" is defined as a "pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2).

Based on the above statutory text, to be convicted of cyberstalking, a defendant must engage in a "course of conduct" with the intent to: (1) kill; (2) injure; (3) harass; (4) intimidate; or (5) place a person under surveillance with any of these intentions.

18 U.S.C. § 2261A(2). This course of conduct must either: (1) place another person "in reasonable fear of the death" or "serious bodily injury"; or (2) cause, attempt to cause, or be reasonably expected to cause substantial emotional distress to another. *Id.*

Thus construed, the "plainly legitimate sweep" of the statute is to prohibit serious criminal conduct, not speech. *Petrovic*, 701 F.3d at 856 (observing that the text of the statute is directed at "conduct" – not speech – and the "conduct it proscribes is not 'necessarily associated with speech'") (quoting *Hicks*, 539 U.S. at 124). In fact, although the defendant claims that Section 2261A(2) "regulates what amounts to speech alone," the word "speech" is not mentioned anywhere in the statute.[5] (D.I. 38 at 6). Rather, the law punishes "acts" undertaken with a criminal purpose. *Osinger*, 753 F.3d at 944 ("[T]he proscribed acts are tethered to the underlying criminal conduct and not to speech."); 18 U.S.C. § 2266(2) (defining "course of conduct" as "2 or more acts" committed with the same purpose).

This is important, since the Supreme Court has instructed that laws that focus on conduct rarely, if ever, raise overbreadth concerns. *Hicks*, 539 U.S. at 124. The cyberstalking statute is no exception. *Osinger*, 753 F.3d at 944; *Petrovic*, 701 F.3d at 856.

---

[5] A defendant need not speak at all to be convicted of violating Section 2261A(2). For example, the statute proscribes placing another person "under surveillance" with the "intent to kill, injure, harass, or intimidate." 18 U.S.C. § 2261A(2). Using a computer or other electronic device to watch the activity of another does not require any communication, much less the type of expression protected by the First Amendment.

11

### 2. *The Cyberstalking Statute Does Not Chill Protected Speech*

For an overbreadth challenge to succeed, the law in question must "frequently intrude" into areas of protected speech. *Matusiewicz*, 84 F. Supp. 3d at 367. The cyberstalking statute does not. In particular, two aspects of Section 2261A(2) ensure that it does not reach expression protected by the First Amendment.

First, the statute requires "malicious intent" – namely, an intent to "kill," "injure," "harass," or "intimidate" another person. *Osinger*, 753 F.3d at 944; *Petrovic*, 701 F.3d at 856. Second, the law requires that the perpetrator's conduct be expected to cause substantial emotional distress to a victim, or actually put that victim in fear of "death" or "serious bodily injury." 18 U.S.C. § 2261A(2).

Any form of speech that satisfies these two elements is highly unlikely to have any "legitimate purpose behind" it. *Matusiewicz*, 84 F. Supp. 3d at 371. Therefore, it will fall into one of the following categories of unprotected expression:

- **Threats and Intimidation.** *See Virginia v. Black*, 538 U.S. 343, 359-360 (2003) (describing "true threats" as statements where a speaker "means to communicate a serious expression of an intent to commit an act of unlawful violence" and including "intimidation" as a "a type of true threat, where a speaker directs a threat to a person . . . with the intent of placing the victim in fear of bodily harm or death."); *Osinger*, 753 F.3d at 947 (rejecting as-applied challenge to cyberstalking conviction in part because defendant sent "threatening" text messages); *Moreland*, 207 F. Supp. 3d at 1228 (likening the cyberstalking statute to the "true threats" and "intimidation" discussed in *Black*).

- **Speech Integral to Criminal Conduct.** *See Sayer,* 748 F.3d at 433-434 (rejecting as-applied challenge to cyberstalking conviction because impersonating victim and "enticing men" to go to her home had no legitimate purpose and only served to put the victim in "danger and at risk of physical harm"); *Petrovic*, 701 F.3d at 854-855 (rejecting defendant's as-applied challenge to

12

cyberstalking conviction because the text messages he used to obtain sexually explicit images of the victim were not afforded First Amendment protection since they were the "means of carrying out" defendant's extortionate threats); *Osinger*, 753 F.3d at 947 (rejecting similar challenge because defendant's actions were integral to his criminal conduct of intentionally harassing, intimidating or causing substantial emotional distress to the victim); *Matusiewicz*, 84 F. Supp. 3d. at 372-373 (discussing *Sayer*, *Petrovic*, and *Osinger* and concluding that "some of the speech" set forth in the indictment "could be integral to the commission of a crime").

- **Defamation.** *Matusiewicz*, 84 F. Supp. at 371-372 (rejecting as-applied challenge to cyberstalking charge in part because "much of the speech alleged in this case could be defamation").

- **Communications Made Solely to Harass.** *United States v. Lampley*, 573 F.2d 783, 787 (3d Cir. 1978) (holding statute criminalizing "the placement of interstate telephone calls" solely to "harass" did not have First Amendment protection because Congress had a "compelling interest in the protection of innocent individuals from fear, abuse or annoyance at the hands of persons who employ the telephone, not to communicate, but for other unjustifiable motives.").

These types of speech are not afforded constitutional protection because "the evil" restricted so "overwhelmingly outweighs the expressive interests" at stake. *Ferber*, 458 U.S. at 763-764.

With this in mind, it is "difficult to imagine" what speech could satisfy the elements of cyberstalking and simultaneously warrant First Amendment protection. *Osinger*, 753 F.3d at 944; *Petrovic*, 701 F.3d at 856. Thus, the defendant cannot meet his burden to establish that the cyberstalking statute frequently intrudes into areas of protected speech.

**C. The Defendant's Argument to the Contrary Lacks Merit**

One construction of Section 2261A(2)(B) prohibits an individual who, with the intent to "harass," engages in a "course of conduct" that causes another person "substantial emotional distress."[6] 18 U.S.C. § 2261A(2)(B). Because of this, the defendant claims that the cyberstalking statute prohibits expression that is merely annoying or insulting. (D.I. 38 at 7-9). As a result, the defendant argues, the statute could apply to "political criticism, social criticism, and religious criticism" – all of which fit squarely within the scope of First Amendment protection. (D.I. 38 at 7-9). This argument fails for two reasons.

First, the defendant "takes the term 'substantial emotional distress' wholly out of context." *Sayer*, 748 F.3d at 435. Although "emotional distress" could theoretically encompass speech that merely offends,[7] the term <u>substantial</u> emotional distress – particularly when coupled with the remaining elements of the cyberstalking statute

---

[6] The cyberstalking statute applies not only to a course of conduct that actually causes "substantial emotional distress," but also to that which "attempts to cause" or "would be reasonably expected to cause" that result. 18 U.S.C. § 2261A(2). This language is the product of a 2013 amendment to the statute. *Ackell*, 2016 WL 6407840 at *5. This amended language is not the focus of the defendant's argument here. (D.I. 38 at 4-10) And even if it were, it should not affect the Court's analysis. *Ackell*, 2016 WL 6407840 at *5.

[7] For example, in *McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232 (3d Cir. 2010), a provision of a university's student code prohibited "Conduct Which Causes Emotional Distress." *Id.* at 250. The Third Circuit concluded that this failed an overbreadth analysis because it required "an exceedingly minimal threshold of harm," and could apply to any speech to which a person might take offense. *Id.* at 250-251. By contrast, "substantial emotional distress" – particularly when inflicted with criminal intent – does not present the same concerns. Thus, *McCauley* is distinguishable.

14

– "clearly targets conduct performed with serious criminal intent, not just speech that happens to cause annoyance or insult." *Id.*; *Moreland*, 207 F. Supp. 3d at 1229 ("[T]he statute does not criminalize a defendant's mere transmission of communications that could be perceived by anyone as merely annoying or insulting."). Therefore, there is little danger that Section 2261A(2) will chill the type of protected speech that defendant imagines.

Second, even if the Court were to assume that there were "limited examples" where the cyberstalking statute affected "potentially protected speech," it would be insufficient to establish an overbreadth claim. *Matusiewicz*, 84 F. Supp. 3d at 367-368. The "law in question must frequently intrude into areas" of protected expression. *Id.* That is clearly not the case here. *See Section B, supra*. The statute's "plainly legitimate sweep" – which applies to surveillance and other activity committed with an intent to "kill," "injure," "harass," and "intimidate" – is much broader than the narrow hypotheticals the defendant posits here. *Id.* Accordingly, as with most laws, the most effective way to police enforcement of Section 2261A(2) is through an as-applied challenge – not the complete invalidation of a statute that has so many constitutional applications. *See Broadrick,* 413 U.S. at 615–616.

## **CONCLUSION**

For all of the reasons set forth above, the defendant's Motion to Dismiss the Indictment should be denied.

                                    Respectfully submitted,

                                    DAVID C. WEISS
                                  ACTING U.S. ATTORNEY

BY:   /s/ Shawn A. Weede
         Shawn A. Weede
         Elizabeth L. Van Pelt
         Assistant United States Attorneys

Dated: December 11, 2017