**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| United States of America, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 17-14-LPS |
| Ho Ka Terence Yung | : | |
| Defendant. | : | |

## MEMORANDUM ORDER

At Wilmington this **7th** day of **October, 2020**:

WHEREAS, on October 23, 2018, Defendant Ho Ka Terence Yung pled guilty to one count of cyberstalking, in violation of 18 U.S.C. §§ 2261A(2)(B) and 2261(b), a Class D Felony, for which the maximum penalties are not more than five years' imprisonment, three years' supervised release, a $250,000 fine, restitution, and a $100 special assessment (*see* D.I. 65);

WHEREAS, in his plea agreement, Defendant "agree[d] to the entry of a Restitution Order for the full amount of the victims' losses attributable to [his] activities[,]" "acknowledge[d] that pursuant to 18 U.S.C. § 2264, the Court is required to order restitution for the full amount of the victims' compensable losses as defined at 18 U.S.C. § 2264(b)(3) and as may be proved by the United States or stipulated to by the parties[,]" and understood "that an unanticipated amount of a restitution order will not serve as grounds to withdraw his guilty plea" (D.I. 65 at 5 ¶ 13);

WHEREAS, under 18 U.S.C. § 2264, the Court must issue a restitution order directing Defendant to pay his victims "the full amount of the victim's losses," including any costs incurred by the victims for, *inter alia,* "(E) attorneys' fees, plus any costs incurred in obtaining a

civil protection order" and "(G) any other losses suffered by the victim as a proximate result of the offense;"

WHEREAS, in addition to Section 2264, the Court may also order restitution pursuant to 18 U.S.C. § 3663, which provides a more general restitution statute authorizing district courts, in their discretion, to order restitution for "any victim" of certain Title 18 offenses, including the offense for which Defendant has pled guilty here;[1]

WHEREAS, to justify restitution under Sections 2264 and 3663 the government bears the burden to prove by a preponderance of the evidence that Defendant's offense proximately caused the victim's loss, *see* 18 U.S.C. § 3664(e); *see also Paroline v. United States*, 572 U.S. 434, 448 (2014); *United States v. Crandon*, 173 F.3d 122, 125-26 (3d Cir. 1999);[2]

WHEREAS, a district court may rely on well-supported and reliable information contained in the presentence investigation report ("PSR") and victim impact statements to establish the amount of a loss subject to restitution, *see United States v. Lopez*, 503 F. App'x 147, 149-50 (3d Cir. 2012); *United States v. Scalzo*, 764 F.3d 739, 745 (7th Cir. 2014); *see also* 18 U.S.C. § 3664(a) ("[T]he court shall order the probation officer to obtain and include in its

---

[1] While § 2264 provides a specific restitution statute for the stalking offense to which Defendant has pled guilty, the Court may also consider Section 3663, which is cross-referenced in § 2264(a), which may apply "[n]otwithstanding section 3663 . . . and in addition to any other civil or criminal penalty authorized by law." *See United States v. Mentzer*, 760 F. App'x 90, 94 & n.2 (3d Cir. 2019).

[2] Defendant argues that 18 U.S.C. § 3664(e) violates the Sixth Amendment by increasing the maximum penalty for a crime based on a preponderance of the evidence standard, contending instead that the government must be required to prove facts beyond a reasonable doubt. (D.I. 115 at 6-9) (citing *United States v. Booker*, 543 U.S. 220 (2005); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)) The Third Circuit rejected this position in *United States v. Leahy*, 438 F.3d 328, 337-38 (3d Cir. 2006) (en banc), holding that *Apprendi* and its progeny do not apply to orders of restitution. *See also United States v. Syme*, 276 F.3d 131, 158-59 (3d Cir. 2002). Defendant acknowledges the impact of *Leahy*. (*See* D.I. 115 at 6)

presentence report . . . information sufficient for the court to exercise its discretion in fashioning a restitution order.");

WHEREAS, on February 13, 2019, the government filed its sentencing memorandum with victim impact statements (D.I. 70) and, on February 21, 2019, the Probation Office filed its final PSR along with victim impact summaries (D.I. 72);

WHEREAS, also on February 21, 2019, Defendant filed his responsive sentencing memorandum (D.I. 73);

WHEREAS, on February 27, 2019, the Court sentenced Defendant to 46 months of imprisonment and found Defendant owes restitution in this case, but as the victims' losses were not ascertainable prior to sentencing, the Court deferred determination of the amount of restitution to a later date (*see* Feb. 27, 2019 Hr'g Tr. at 104-05; *see also* D.I. 72 at 31 ¶¶ 112-13; D.I. 87);

WHEREAS, the Court stated the following at the sentencing hearing: "Upon final determination of the victims' losses, restitution will be due immediately. It is recommended that [Defendant] make payments from any wages . . . earn[ed] in prison in accordance with the Bureau of Prisons Inmate Financial Responsibility Program. Any portion of the restitution that is not paid in full at the time of [Defendant's] release from imprisonment shall become a condition of supervision. And [Defendant] shall pay no less than $50 monthly to begin 60 days following . . . release from confinement" (Feb. 27, 2019 Hr'g Tr. at 105);

WHEREAS, on November 25, 2019, the government submitted a letter to the Court regarding restitution (D.I. 104);

WHEREAS, on January 29, 2020, the Court granted Defendant's request to proceed *pro se* on the restitution issue, while also appointing the Federal Public Defender to act as stand-by

counsel (*see* Jan. 29, 2020 Hr'g Tr. at 12);

WHEREAS, Defendant docketed three *pro se* filings dated between December 2019 and January 2020 in response to the government's restitution letter (*see* D.I. 113-15),[3] *pro se* filings the government was only first able to review following the January 29, 2020 hearing (*see* D.I. 117);[4]

WHEREAS, on March 11, 2020, the government filed a response to Defendant's *pro se* filings, in which the government addressed legal issues raised by Defendant and confirmed that it seeks $69,456.56 on behalf of Victim #1 plus reasonable costs associated with taking down Internet postings that formed the basis of Defendant's stalking campaign and remain available online; $955.40 on behalf of Victim #4; and $130,000 on behalf of Georgetown University (D.I. 120);[5]

WHEREAS, on April 3, 2020, the Court held a teleconference with Defendant, stand-by counsel, and the government on the issue of restitution, in which the parties were informed that to the extent the Court determined no additional writing or argument was necessary, the issue of

---

[3] Generally, *pro se* filings are held to a "less stringent" standard than papers drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court "does not extend the indulgence of the *pro se* liberal construction rule to *pro se* litigants who . . . are also attorneys." *Jiggi v. Republic of Cameroon*, 2019 WL 2135856, at *2 (D. Del. Mar. 15, 2019). Here, Defendant is a former law student but did not graduate or take the bar exam. It is clear that he has at least some proficiency in legal research and writing. Nevertheless, the Court has construed and considered his responsive papers liberally.

[4] Defendant filed 96 pages of single-spaced briefing on the subject of restitution. It appears, as the government observes, that the last of the three documents (D.I. 115) states Defendant's final position. (*See* D.I. 120 at 1 n.1) In any event, the Court has considered all of Defendant's filings.

[5] The restitution requested at the time of Defendants' February 27, 2019 sentencing hearing was higher than what the government now seeks: Victim #1 sought more than $1.1 million (D.I. 72 at 14-15), Victims #5 and #6 sought $2 million in restitution (*id.* at 16-17), and Georgetown University sought a minimum of $150,000 (D.I. 91).

restitution would be resolved without further input from the parties (*see* Apr. 3, 2020 Hr'g Tr. at

9);

WHEREAS, the Court has reviewed and considered the totality of the record and the

parties' various filings concerning restitution (*see, e.g.*, D.I. 65, 70, 72, 73, 91, 104, 113-15,

120);

**NOW, THEREFORE, IT IS HEREBY ORDERED** that, for the following reasons,

Defendant Yung is ordered to pay restitution to Victim #1, Victim #4, and Georgetown

University as stated below:

1.    Defendant shall pay Victim #1 restitution, pursuant to 18 U.S.C. § 2264, in the

amount of $69,288.81 plus reasonable costs associated with taking down Internet postings that

formed the basis of Defendant's stalking campaign that remain available online.  (*See* D.I. 120 at

2)  The government has carried its burden by a preponderance of the evidence, including through

the submission of Victim #1's impact statement (D.I. 70 at *91-95) and the PSR (D.I. 72 at 14-

15), proving that Defendant's offense proximately caused Victim #1 the following losses:

$64,234.65 in attorneys' fees, $2,775 in investigative fees,[6] $2,069 on a home security system,

$153 on travel, and $57.16 in PACER fees.[7]

---

[6] Defendant suggests that investigative materials in this case show Victim #1's employer
paid for attorneys and investigative fees. (*See, e.g.*, D.I. 115 at 30-31)  The government
represents, however, that Victim #1 "ultimately reimbursed the company – either out of his own
pocket or through an offset of money owed to him." (D.I. 120 at 5)  The Court finds it
appropriate to rely on Victim #1's statement of loss (D.I. 70 at *94), as supplemented by the
government's representation, in finding, by a preponderance of the evidence, that this loss was
suffered by Victim #1 and not Victim #1's employer.

[7] While the government seeks $225 in PACER fees (D.I. 120 at 2), Defendant argues that
these fees were only $57.16 (D.I. 115 at 2, 31).  The PSR does not identify the specific amount
of PACER fees. (D.I. 72 at 14-15)  Nor does Victim #1's victim impact statement specifically
identify PACER fees; instead, it lists $57.16 in "Other" direct expenses. (D.I. 70 at *94)  On this
record, the Court is able to find by a preponderance of evidence only $57.16 of PACER fees

Defendant argues against the imposition of restitution for attorneys and investigative fees, reasoning that Section 2264(b)(3)(E) limits recovery of attorneys' fees to those "incurred in obtaining a civil protection order." (D.I. 115 at 15)  But Defendant does not account for the catchall provision in Section 2264(b)(3)(G), which permits recovery for "any other losses suffered by the victim as a proximate result of the offense." *See also Lagos v. United States*, 138 S.Ct. 1684, 1689-90 (2018) (pointing to Section 2264's catchall phrase as exemplary restitution statute that does not limit the "kinds of losses and expenses that it covers"); *see also* 18 U.S.C. § 2264(b)(1) (broad statutory language mandating restitution for "the full amount of the victim's losses"). Put simply, Victim #1 is entitled to attorneys and investigative fees pursuant to, at least, the catchall provision in Section 2264(b)(3).[8]  (*See* D.I. 120 at 4-5 & n.7)

With respect to Victim #1's expenses for a home security system upgrade, the Court is not persuaded by Defendant's argument that local crime statistics were the cause for these additional security measures.  (*See* D.I. 115 at 26)  A preponderance of the evidence shows that Victim #1's payment for home security system upgrades was proximately caused by Defendant's cyberstalking campaign, which yielded, *inter alia*, unsolicited visitors to Victim #1's home under extremely troubling circumstances.  (D.I. 120 at 5; *see* D.I. 65 Ex. B; D.I. 70 at *4-18)

The Court further notes that Defendant's plea agreement requires Defendant to pay "the full amount of victims' losses attributable to [his] activities." (D.I. 65 at 5 ¶ 13)  Victim #1's losses stated above are "attributable" to Defendant's activities.

2.    Defendant shall pay Victim #4 restitution, pursuant to 18 U.S.C. § 2264, in the

---

among the losses suffered by Victim #1.

   [8] There may also be a basis to award attorneys fees based on Section 2264(b)(3)(E), which may not be limited only to those circumstances in which attorneys fees were incurred in obtaining a civil protection order.  The Court need not resolve this dispute.

amount of $955.40.  The government has carried its burden by a preponderance of the evidence, including through the PSR, to show that Defendant's offense proximately caused Victim #4's loss.[9] (*See* D.I. 72 at 16)

       3.      Defendant shall pay Georgetown University restitution, pursuant to 18 U.S.C. § 3663, in the amount of $130,000.  (*See* D.I. 104; D.I. 120 at 6-7)  The government has carried its burden by a preponderance of the evidence, including through the PSR (D.I. 72 at 17-18) and letters from Georgetown University (D.I. 70 at *102-05; D.I. 91), to show that Defendant's offense proximately caused Georgetown $130,000 in losses related to security.

       Defendant argues that Georgetown University is not entitled to restitution under Section 3663, reasoning that, pursuant to the Dictionary Act, "a person" within the definition of "victim" only extends to natural persons, not entities.  (D.I. 115 at 11)  The Third Circuit, however, has determined that universities receiving federal funding, as Georgetown does, are within the definition of "victim" for purposes of restitution. *See, e.g., United States v. Bryant*, 655 F.3d 232, 253 (3d Cir. 2011) (University of Medicine and Dentistry of New Jersey eligible for restitution as "victim" under 18 U.S.C. § 3663A, which uses same definition as Section 3663); *United States v. Ritacco*, 2012 WL 6626093, at *1 (D.N.J. Dec. 19, 2012) (Toms River School District eligible as "victim" under Section 3663A); *see also United States v. Ekanem*, 383 F.3d 40, 44 (2d Cir. 2004) (observing that "person" in Section 3663 includes governmental entities such as Internal Revenue Service and State of New York and rejecting argument that default definition of "person" in Dictionary Act controlled).  As such, the Court is persuaded that

---

[9] Defendant does not appear to challenge whether Victim #4 is entitled to the requested restitution, other than to generally allege that Victim #4 has not provided "independent documentation" to substantiate Victim #4's restitution requests.  (*See* D.I. 115 at 30)  The Court, however, finds that the PSR provides an adequate basis to order $955.40 in restitution.

Georgetown University is entitled to restitution as a "victim" under Section 3663.

Defendant also argues that Georgetown is not entitled to restitution for increased security costs because such expenses are not directly attributable to any loss, damage, or destruction of property.  (D.I. 115 at 20) (citing Section 3663(b)(1)(A), which provides that court may order restitution relating to "damage to or loss or destruction of property")  In response, the government points to *United States v. Quillen*, in which the Third Circuit explained that "damage" is "commonly understood to be something done or suffered that reduces the value or usefulness of the thing affected or spoils its appearance."  335 F.3d 219, 225 (3d Cir. 2010).  The defendant in *Quillen* had sent a letter to the state parole board with a powdery substance.  *Id.* at 220.  Fearing the substance was anthrax, the authorities closed down the mail room and incurred significant costs attempting to decontaminate its facilities.  *Id.* at 222-25.  The Third Circuit held "damage" was suffered because the "ostensible contamination of the . . . mail room effectively eliminated that facility's usefulness until proved to be contamination free."  *Id.* at 225.

The Court is persuaded by a preponderance of the evidence that Georgetown University's property, namely its security systems, was "damaged" as a result of Defendant's cyberstalking campaign.  A letter from Georgetown University's Director of Threat Assessment establishes that "[a]s a result of the acute safety risk posed by [Defendant's] activities, Georgetown University had to deploy numerous, continuous security measures above and beyond the customary means and methods used to secure the university's campuses, and to provide necessary protection to Georgetown University students, employees, and visitors."  (D.I. 91 at 1-2)  Georgetown also contends that its "security leaders are already planning for enhanced security measures upon [Defendant's] release," as Georgetown continues to consider Defendant a significant security threat until he has successfully completed mental health treatment.  (*Id.* at

8

2)  It further states that the total financial burden imposed by Defendant's actions has been, at a minimum, $150,000 (*id.*), of which the government now seeks $130,000 as restitution (D.I. 120 at 2).

The Court believes that such precautions and security measures have been more than reasonable and are specifically tethered to Defendant's offense.[10]  The course of Defendant's cyberstalking campaign showed animus toward Georgetown University and specific individuals on campus.  Defendant exhibited an ability and willingness to inspire third parties with potentially violent intentions to show up at locations of his victims.  (*See* D.I. 104)  Under these circumstances, the Court agrees with the government:

> Based on defendant's course of conduct, Georgetown University took additional precautions to ensure the safety of its campuses – i.e., costs to return the university's property to the same [safe and protected] position it would be in but for the defendant's criminal activity.

(D.I. 120 at 6-7)  Georgetown is entitled to the costs necessary to return the university's property (namely, its security systems) to a level it would have maintained – without the additional expenditures – absent Defendants' criminal activity.[11]

Finally, as contemplated in Section 3663(a)(1)(B)(i)(II), the Court has considered Defendant's "financial resources" and his "financial needs and earning ability."  It is reported by the Probation Office that, as of February 2019, Defendant had $1,000 in a bank account with no other assets, liabilities, or debts.  (D.I. 72 at 28)  At sentencing, the Court considered this

---

[10] Defendant argues that, similar to his argument about Victim #1, Georgetown University's additional security measures were caused by local crime statistics, not his conduct. (D.I. 115 at 24-26)  There is no record support for this contention.

[11] The Court further agrees with the government that *Government of Virgin Islands v. Davis*, 43 F.3d 31, 44-46 (3d Cir. 1994), does not alter the outcome here.  (*See* D.I. 120 at 7 n.8)

information and found that Defendant did not have the ability to pay a fine and, thus, waived the

applicable fines (potentially $250,000) that could have been imposed under 18 U.S.C.

§§ 2261A(2)(B) and 2261(b).  (Feb. 27, 2019 Hr'g Tr. at 105-06)  But waiving fines does not bar

an order for restitution.  Despite Defendant's current financial status, the Court will not limit the

total amount of restitution owed to Georgetown University, although this fact may be taken into

consideration when crafting Defendant's payment schedule.  *See generally United States v.*

*Allen*, 201 F.3d 163, 168 (2d Cir. 2000) (per curiam).[12]

    4.      The government, Defendant, and stand-by counsel shall meet and confer on the

issue of a restitution payment schedule consistent with this Order and the February 27, 2019

sentencing hearing.  Not later than October 16, 2020, the government shall file a joint status

report and inform the Court whether any issues remain for the Court to resolve.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

[12] With respect to the order of restitution for Victims #1 and #4, which is authorized by Section 2264, the "economic circumstances of the defendant" are irrelevant.  18 U.S.C. § 264(b)(4)(B)(i).